1

2

3

4

5

6

7            .

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11   AILEEN RIZO,                          CASE NO. 1:14-cv-0423-MJS

12              Plaintiff,                 **AMENDED ORDER DENYING
                                           DEFENDANT'S MOTION FOR SUMMARY**
13        v.                               **JUDGMENT (ECF NO. 12);**

14   JIM YOVINO, FRESNO COUNTY             **ISSUING CERTIFICATION FOR**
15   SUPERINTENDENT OF SCHOOLS,            **INTERLOCUTORY APPEAL; AND**

16              Defendant.                 **VACATING JANUARY 12, 2016, TRIAL
                                           DATE**
17

18

19   I.    **INTRODUCTION AND PROCEDURAL HISTORY**

20        Plaintiff initiated this action on February 3, 2014, in the Fresno County Superior

21   Court. She pled four causes of action: (1) violation of the federal Equal Pay Act ("EPA"),

22   29 U.S.C. § 206(d); (2) sex discrimination under California Government Code § 12940;

23   (3) sex discrimination under Title VII of the Civil Rights Act of 196, 42 U.S.C. §2000e et

24   seq. (Title VII"); and (4) failure to prevent discrimination under California Government

25   Code §12940(k).

26        Defendant Jim Yovino, Fresno County Superintendent of Schools (erroneously

27   sued as Fresno County Office of Education), removed this action to this Court on March

28

1 | 24, 2014, pursuant to 28 U.S.C. § 1441(c)(1)(A). The parties have consented to the
2 | undersigned's jurisdiction for all purposes. (<u>See</u> ECF Nos. 6, 7.)

3 |      This matter is before the Court on Defendant's motion for summary judgment.
4 | (ECF No. 12.) Plaintiff has filed an opposition. (ECF No. 14.) Defendant has filed a reply.
5 | (ECF No. 16.) On November 19, 2015, the parties filed supplemental briefs. (ECF Nos.
6 | 18, 19.) The Court heard argument on the motion on November 25, 2015.  The motion is
7 | fully briefed and ready for disposition.

8 | **II.**   <u>**LEGAL STANDARDS**</u>

9 |      Any party may move for summary judgment, and the Court shall grant summary
10 | judgment if the movant shows that there is no genuine dispute as to any material fact
11 | and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); <u>Wash.</u>
12 | <u>Mut. Inc. v. United States</u>, 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position,
13 | whether it be that a fact is disputed or undisputed, must be supported by (1) citing to
14 | particular parts of materials in the record, including but not limited to depositions,
15 | documents, declarations, or discovery; or (2) showing that the materials cited do not
16 | establish the presence or absence of a genuine dispute or that the opposing party
17 | cannot produce admissible evidence to support the fact. Fed R. Civ. P. 56(c)(1). The
18 | Court may consider other materials in the record not cited to by the parties, but it is not
19 | required to do so. Fed. R. Civ. P. 56(c)(3); <u>Carmen v. San Francisco Unified Sch. Dist.</u>,
20 | 237 F.3d 1026, 1031 (9th Cir. 2001).

21 |      Plaintiff bears the burden of proof at trial, and to prevail on summary judgment,
22 | she must affirmatively demonstrate that no reasonable trier of fact could find other than
23 | for her. <u>Soremekun v. Thrifty Payless, Inc.</u>, 509 F.3d 978, 984 (9th Cir. 2007).
24 | Defendants do not bear the burden of proof at trial and, in moving for summary
25 | judgment, they need only prove an absence of evidence to support Plaintiff's case. <u>In re</u>
26 | <u>Oracle Corp. Securities Litigation</u>, 627 F.3d 376, 387 (9th Cir. 2010).

27 |
28 | 2

In judging the evidence at the summary judgment stage, the Court may not make credibility determinations or weigh conflicting evidence, <u>Soremekun</u>, 509 F.3d at 984, and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, <u>Comite de Jornaleros de Redondo Beach v. City of Redondo Beach</u>, 657 F.3d 936, 942 (9th Cir. 2011).

**III.    UNDISPUTED FACTS[1]**

    **A.    Standard Operating Procedure No. 1440 ("SOP 1440")**

        **1.    Overview**

The Fresno County Office of Education's ("FCOE") Management Salary Schedule sets forth the pay range for management-level employees. It consists of twelve levels. Each level has progressive steps within it. <u>See</u> Gunner Decl., Ex. G. Plaintiff and other math consultants were hired at Level 1.  Level 1 has 10 steps, with pay ranging from $62,133 at Step 1 to $81,461 at Step 10. <u>Id.</u>

Prior to November 2004, Standard Operation Procedure No. 1038 ("SOP 1038") set forth the criteria for determining the proper step on the salary schedule for management-level employees "based on experience regarding the position awarded." Gabriel Dep., Ex. 15, ECF No. 14-3 at 89-91.

In November 2004, Standard Operation Procedure No. 1440 ("SOP 1440") was adopted to replace SOP 1038. Gabriel Dep., Ex. 15, ECF No. 14-3 at 99-100. Under SOP 1440, a new management employee's initial salary step is determined by verifying the daily rate of the employee's most recent position, adding a five-percent increase, and then placing that new employee on the next step that pays an amount at or above the five percent increase. Gabriel Decl. ¶ 4. Experience is no longer a factor in determining a candidate's placement on the salary schedule. <u>See</u> Gabriel Dep. at 49:2-6, Ex. 15. SOP 1440 also applies to FCOE employees being promoted. Gabriel Dep. at 27:2-5.

---

[1] All facts set forth herein are found to be without material dispute unless noted otherwise.

1    Laurie Gabriel, Administrator of FCOE's Human Resource's Department, has

2   worked for FCOE since 1998, first as the Director of Human Resources, then Senior

3   Director, and most recently as the Administrator. Gabriel Decl. ¶ 2. Although the policy of

4   basing a management employee's initial salary on verified prior earnings plus a five-

5   percent increase was not written until November 2004, FCOE has applied that policy

6   since at least 1998 when Gabriel was first hired. Gabriel Decl. ¶ 5; see also Gabriel Dep.

7   at 50:17—51:2.

8              **2.       Hiring Pursuant to SOP 1440**

9    When a job opening at FCOE is posted, the salary range is posted along with the

10  job description. Dueck Dep. at 18:21-22. An applicant receives no explanation as to how

11  his or her starting salary will be determined unless he or she asks. See Gabriel Dep. at

12  30:22—31:4. An applicant does not learn what his or her actual starting salary will be

13  until an offer is made. Gabriel Dep. at 30:10—31:4; Dueck Dep. at 18:6-14.

14   Defendant Jim Yovino, first hired on July 31, 2006 as a Deputy Superintendent, is

15  now the Fresno County Superintendent for FCOE. Yovino Decl. ¶ 3. As Superintendent,

16  Yovino's responsibilities include determining how salaries are set. Yovino Decl. ¶ 3.

17  Yovino has hired or promoted a number of employees pursuant to SOP 1440, including

18  Eric Crantz, Tina Nakasian, and Mike Chamberlain, all of whom work in Plaintiff's

19  department and in the same position as Plaintiff[2]:

20   Tina Nakasian, a female, was hired on July 23, 2012, and placed on Step 8 of the

21  management salary schedule pursuant to SOP 1440. Yovino Decl. ¶ 6c.

22   Eric Crantz, a male, was "on loan" from another Fresno County school district,

23  Kingsburg Elementary School District, in 2009. Yovino Decl. ¶ 6e. He was being paid in

24  accordance with that school district's salary schedule while performing services for

25  FCOE. Yovino Decl. ¶ 6e. In July 2012, Crantz was hired as a permanent employee and

26  placed on Step 9 of the management salary schedule in accordance with SOP 1440.

27  _____

28  [2] A fourth individual, Carl Veater, also worked as a math consultant in Plaintiff's department. He was hired on December 22, 2003, at Step 7. Gabriel Decl., Ex. C, ECF No. 12-6 at 3.

Yovino Decl. ¶ 6e; Crantz Dep. at 15:19-22, Ex. 19. Within a day after signing his hiring contract, Crantz noticed that the salary information on it incorrectly showed him earning more than he was entitled to be paid. Crantz Dep. at 22:1-11. Within a day of bringing the error to the attention of the human resources department, Crantz signed a new contract with the correct salary information. Crantz Dep. at 22:15-20, 24:4-25.

Mike Chamberlain, a male, was hired on July 23, 2012, and placed on Step 7 of the salary schedule. Yovino Decl. ¶ 6d. When an offer was made to Chamberlain, he was unaware that salaries were determined by application of SOP 1440, and he tried to negotiate a higher salary by pointing out relevant contract and consultant work he did in addition to his primary job. Chamberlain Dep. at 16:14-23. Though he felt that his concerns were listened to, see Chamberlain Dep. at 17:16-25, his starting salary remained as determined under SOP 1440. Yovino Decl. ¶ 6d. Chamberlain's starting salary was based on a contract he had entered into with Caruthers Unified School District commencing on July 1, 2012, even though he had not actually begun work under that contract. Yovino Decl. ¶ 7. A day or two after signing his initial hiring contract, Chamberlain signed a new contract because the initial contract had incorrect salary information; as a result Chamberlain's salary was adjusted down. Chamberlain Dep. at 28: 3-19.

Since July 1, 2005, when Yovino's predecessor was hired, 9 female administrators were hired or promoted into management positions and placed on a higher step than Yovino's and his predecessor's initial placements. Yovino Decl. ¶ 9. During the same time frame, three male administrators were hired or promoted into management positions and placed on a step higher step than Yovino's and his predecessor's initial placements. Yovino Decl. ¶ 9.

### 3.   Deviations from SOP 1440

There have been times when Defendant has deviated from the standards set forth in SOP 1440. When Elaine Sotiropoulous was hired as a management employee in

5

1   January 2000, there were three different versions of the management salary schedule in

2   effect. Yovino Decl. ¶ 8. Sotiropoulous was placed on Step 3, which may have been one

3   step higher than she should have been placed under SOP 1440. Yovino Decl. ¶ 8.

4       In October 2008, Mark Hammons was promoted from an employee in the

5   classified bargaining unit (a 12-month position) to a management position (an 11-month

6   position). Yovino Decl. ¶ 7. Under SOP 1440, Hammons should have been placed at

7   Step 1, but Yovino approved placement at Step 2 because of the fewer days Hammons

8   would be working; otherwise, Hammons's promotion would have resulted in a pay cut.

9   Yovino Decl. ¶ 7; Gabriel Decl. ¶ 6.

10      **B.    Plaintiff's Application and Employment with FCOE**

11      Plaintiff, a female, has a Bachelor of Science in Mathematics Education, a

12  Master's degree in Educational Technology, and a Master's degree in Mathematics

13  Education. Pl. Dep. at 8:14-24, 9:2-14. Her work experience includes teaching high

14  school math, physics and art at a public school, id. at 10:12-22; working as a math

15  department head and then math curriculum designer at a publishing company, id. at

16  11:2-19; and teaching math at a public school, id. at 12:6-15, 15:4-10.

17      In September 2009, Plaintiff applied for a position as a math consultant in the

18  Science, Technology, Engineering and Mathematics (STEM) Department at FCOE.

19  Yovino Decl. ¶ 11; Pl. Decl. ¶ 2; Pl. Dep., Attach. As part of her application, Plaintiff

20  submitted proof of her earnings at her previous position. Pl.'s Dep. at 21:1-4.

21      Following two interviews, Lori Hamada offered Plaintiff the math consultant

22  position in October 2009 by with a starting salary at Step 1 of the salary schedule

23  pursuant to SOP 1440. Pl.'s Dep. at 20:5-7, 27:2-5; Yovino Decl. ¶ 11. Plaintiff

24  understood that her salary was comparable to a person with as much experience as she

25  had. Pl. Dep. at 24:19-22.

26      Plaintiff's last position paid her $50,630 plus $1,200 for her Master's degree for

27  206 days. Pl. Dep. at 22:7-12. Plaintiff's starting salary at FCOE was $62,133, plus a

28                                              6

master's degree stipend of $600 for 196 days of work. Id. at 22:22:25, 27:2-5. Plaintiff was paid $11,500 more than her previous salary for 20 fewer days of work. Plaintiff remains employed at FCOE and has received a raise each year. Id. at 95:4-6.

### C.   FCOE Math Consultants

The record is unclear as to how many math consultants were in Plaintiff's group at the time that she filed her complaint. Defendant asserts that there were five: Plaintiff (female), Tina Nakasian (female), Eric Crantz (male), Mike Chamberlain (male), and Carl Veater (male). Per the Joint Statement of Undisputed Facts, Tina Nakasian was hired on July 23, 2012, before Plaintiff filed her complaint. See ECF No. 12-17 at 2 ¶ 13. Plaintiff's, however, maintains that there were only four math consultants when she filed her complaint and that she was the only female. Pl. Decl. ¶¶ 5, 8.[3]

### D.   Complaint to Human Resources

On July 31, 2012, Plaintiff was having lunch with several colleagues when she was informed by Eric Crantz, who had just been hired, that he had been placed on Step 9 of the salary schedule. Pl. Decl. ¶ 6.

On August 7, 2012, Plaintiff complained to Gabriel about the pay disparity between herself and her male colleagues. Pl. Decl. ¶ 7; Gabriel Decl., Ex. D. Based on Plaintiff's concerns, Gabriel requested that reports be compiled on management employees as of August 2012 who held the same or similar classifications as Plaintiff. Gabriel Decl. ¶ 9. The results demonstrated to Defendant that there was no significant difference between men and women insofar as their initial placement on the salary scale.[4] Id.

Based on the results of the reports, on August 31, 2012, Gabriel wrote a letter to Plaintiff, explaining that Plaintiff's placement on the salary schedule was consistent with SOP 1440 and not discriminatory. Gabriel Decl. ¶ 10, Ex. D. Gabriel also informed

[3] It is undisputed that Tina Nakasian, a woman, works in the same department and in the same position as Plaintiff, see J. Statement of Undisputed Facts, ECF No. 12-17 at 3, see also Pl. Dep. at 38:4-9.
[4] The same reports were prepared twice more, in January 2013 and June 2014, with similar results. Gabriel Decl. ¶ 9.

7

1    Plaintiff that a review of current management employees hired over the past 25 years

2    demonstrated that consistent application of SOP 1440 had placed more females higher

3    on the salary schedules than males in the same or similar position in the same

4    department.[5] Id.

5    **IV.    EVIDENTIARY MATTERS**

6         **A.    Plaintiff's Request for Judicial Notice**

7         Plaintiff asks the Court to take judicial notice of the United States Department of

8    Labor Bureau of Labor Statistics' 2014 survey results of earnings of male and female

9    employees by occupation, which she attached to her request and is also available at

10   http://www.bls.gov/cps/cpsaat39.pdf. (ECF No. 14-5.) Though Plaintiff does not state

11   why she seeks judicial notice of this document in her request, her opposition refers to it

12   as evidence of a pay disparity between male and female educators. Opp'n at 21-22.

13        Defendant objects to this request on the ground that Plaintiff fails to authenticate

14   or lay a foundation for the document or show how the "facts" contained therein are

15   capable of accurate and ready determination. Defendant also objects that the document

16   reflects wages nationwide, not wages of male and female educators in California and

17   Arizona, the states where the salaries at issue here were determined.

18        The Court may take judicial notice of matters that are either "generally known

19   within the trial court's territorial jurisdiction" or "can be accurately and readily determined

20   from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

21   Under Federal Rule of Evidence 901, evidence that a public record or report is from the

22

23   [5]      Several days after filing the complaint, Plaintiff's supervisor, Jon Dueck, remarked in front of

24   others that because FCOE was applying for a grant whose purpose was to serve women and minorities,
     Plaintiff should write the grant. Pl. Decl. ¶ 9. Dueck said, "You're a girl and you're a minority, why don't you
     write that grant." Pl. Decl. ¶ 9. Dueck laughed about the comment with another male co-worker. Pl. Decl. ¶

25   9. Even though Plaintiff found the comment to be inappropriate, she never discussed it with Dueck never
     reported the incident to human resources. Dueck Dep. at 26:3-5; Pl. Dep. at  81:17-19, 88:18-20.

26        Defendant moves, in part, for summary judgment on Plaintiff's fourth claim – failure to prevent
     discrimination – on the ground that it could not have prevented discrimination with regard to Jon Dueck's

27   statements because Plaintiff never complained about the statements. The opposition, however, clarifies
     that Plaintiff's fourth claim is actually premised on Defendant's failure to discontinue application of SOP

28   1440 following Plaintiff's complaint. It is not based on Jon Dueck's statements.

1    public office where items of that nature are kept satisfies the requirement that admitted

2    evidence be authenticated. Premier Nutrition, Inc. v. Organic Food Bar, Inc., 2008 WL

3    1913163, at *5 (C.D. Cal. Mar. 27, 2008) aff'd, 327 Fed. Appx. 723 (9th Cir. 2009). The

4    printout also bears "distinctive characteristics" of the agencies' websites. Haines v.

5    Home Depot U.S.A., Inc., 2012 WL 1143648, at *7 (E.D. Cal. Apr. 4, 2012) ("courts have

6    considered the 'distinctive characteristics' of the website in determining whether a

7    document is sufficiently authenticated." (Citations omitted)).

8        Rule 902 allows for the self-authentication of certain documents, including official

9    publications: "Books, pamphlets, or other publications purporting to be issued by public

10   authority." Fed. R. Evid. 902(5); Paralyzed Veterans of Am. v. McPherson, 2008 WL

11   4183981, at *7 (N.D. Cal. Sept. 9, 2008). Federal courts routinely consider records from

12   government websites to be self-authenticating. See, e.g., Estate of Gonzales v.

13   Hickman, 2007 WL 3237727, at *2 (C.D. Cal. May 30, 2007); Lorraine v. Markel Am. Ins.

14   Co., 241 F.R.D. 534, 551 (D. Md. 2007) ("Given the frequency with which official

15   publications from government agencies are relevant to litigation and the increasing

16   tendency for such agencies to have their own websites, Rule 902(5) provides a very

17   useful method of authenticating these publications. When combined with the public

18   records exception to the hearsay rule, Rule 803(8), these official publications posted on

19   government agency websites should be admitted into evidence easily."); U.S. ex rel.

20   Parikh v. Premera Blue Cross, 2006 WL 2841998, at *4 (W.D. Wash. Sept. 29, 2006)

21   (considering documents that can be found on Government websites, such as GAO

22   Reports and Health and Human Services' Reports self-authenticating).

23       Here, the printout from Bureau of Labor Statistics is an official United States

24   Government publication that is accessible via the government entity's website. The Court

25   therefore deems it an "Official Publication" under Rule 902(5) and considers it properly

26   authenticated. As it relates to this case, the survey results establish that, on average and

27

28                                                9

1  in the United States as a whole, male teachers out-earn their female counterparts.[6] The

2  Court will take judicial notice of this fact.

3      **B.    Defendant's Objections**

4      Defendant also objects that Plaintiff has in numerous places mischaracterized the

5  record or deposition testimony and made arguments premised on inadmissible hearsay.

6  The Court has independently reviewed and evaluated the deposition transcripts and

7  other evidence and does not rely on either party's characterization of the evidence in

8  reaching its decision.   Accordingly, the objections are moot and overruled on that

9  ground.

10 **V.    DISCUSSION**

11      **A.    The Equal Pay Act**

12      The Equal Pay Act ("EPA") makes it unlawful for employers to pay employees of

13 one sex less than employees of the opposite sex "for equal work on jobs the

14 performance of which requires equal skill, effort, and responsibility, and which are

15 performed under similar working conditions." 29 U.S.C. § 206(d)(1).

16     The Ninth Circuit employs a burden-shifting framework in evaluating EPA claims.

17 The plaintiff initially has the burden of establishing a prima facie case by demonstrating

18 that employees of the opposite sex were paid different wages for work that was

19 "substantially equal." See Stanley v. Univ. of S. Cal., 178 F.3d 1069, 1073-74 (9th Cir.

20 1999). The "substantially equal" inquiry involves two discrete steps. First, the plaintiff

21 must show that the jobs being compared "have a common core of tasks." Id. at 1074

22 (internal quotation marks omitted). If the plaintiff makes this showing, "the court must

23 then determine whether any additional tasks, incumbent on one job but not the other,

24 make the two jobs 'substantially different.'" If the jobs entail substantial differences in

25

26 [6] During oral arguments, defense counsel disputed that this survey reflected a pay disparity between male
and female educators. The Court finds otherwise. The document demonstrates that the median weekly
earnings of full-time workers in the "Education, training, and library occupations" are $1,140 for men and
27 $897 for women. A pay disparity also is shown for each of the subjections thereunder, which include post-
secondary teachers ($1,409 for men and $1,143 for women); secondary school teachers ($1,108 for men
28 and $984 for women); and elementary and middle school teachers ($1,096 for men and $956 for women).

skill, effort, or responsibility, or if the jobs are not performed under similar working conditions, the claim must fail. See Forsberg v. Pac. Nw. Bell Tel. Co., 840 F.2d 1409, 1414 (9th Cir. 1988) (explaining that each criterion must be met).

Once the plaintiff establishes a prima facie case, the burden shifts to the employer to demonstrate that the wage disparity is attributable to one of four statutory exceptions: "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." 29 U.S.C. § 206(d)(1). "These exceptions are affirmative defenses which the employer must plead and prove." Maxwell v. City of Tucson, 803 F.2d 444, 446 (9th Cir. 1986) (internal quotation marks omitted). If the employer establishes one of the affirmative defenses, the burden shifts back to the plaintiff to show that "the employer's proffered nondiscriminatory reason is a pretext for discrimination." Stanley, 178 F.3d at 1076 (internal quotation marks omitted).

### 1.    Plaintiff's Prima Facie Case

In making her prima facie case under the EPA, Plaintiff asserts that she is a woman who was started at a lower step on the salary schedule than her male coworkers despite being hired for substantially equal work. The evidence before the Court confirms that Plaintiff started at Step 1 on the management salary schedule, Mike Chamberlain started at Step 7, Carl Veater started at Step 7, and Eric Crantz started at Step 9. Plaintiff omits mention of the second female in this group, Tina Nakasian, who started at Step 8 and thus was higher on the salary schedule than two of the three males. However, "[t]he existence of a female in the higher classification does not … defeat the plaintiff's prima facie showing of wage discrimination." E.E.O.C. v. Maricopa County Comm. College Dist., 736 F.2d 510, 515 (9th Cir. 1984) (internal citation omitted). "[T]he proper test for establishing a prima facie case in a professional setting … is whether the plaintiff is receiving lower wages than the average of wages paid to all employees of the opposite sex performing substantially equal work and similarly situated with respect to

1    any other factors, such as seniority, that affect the wage scale." See Hein v. Oregon

2    College of Educ., 718 F.2d 910, 916 (9th Cir. 1983). The Court finds, and Defendant

3    does not dispute, that Plaintiff has met her burden here.  She has established a prima

4    facie case.

5                    **2.        Defendant's Affirmative Defense: Prior Salary**

6          The burden now shifts to Defendant to show that the wage disparity caused by

7    SOP 1440 derives from a system which falls within one of EPA's four exceptions.

8    Defendant's affirmative defense rests on the fourth catch-all provision, i.e., that the

9    salary difference results from a factor other than sex, namely application of a facially-

10   neutral policy, SOP 1440.

11         Salary differences that result from unequal starting salaries "do not violate the

12   Equal Pay Act if the original salary can be justified by one of the four exceptions to the

13   Equal Pay Act." Hein, 718 F.2d at 920. Defendant asserts that FCOE's policy qualifies as

14   such because it determines an applicant's starting salary solely by reference to his or her

15   prior salary and does so for four business reasons: (1) SOP 1440 is objective; (2) it is

16   effective in attracting quality new employees; (3) it prevents favoritism and ensures

17   consistency; and (4) it is a judicious use of taxpayer dollars.

18         Plaintiff argues, however, that an employer's reliance solely on prior salary in

19   setting starting salaries is prohibited by the EPA. Defendant counters that the Ninth

20   Circuit has unequivocally found that the EPA allows an employer's consideration of prior

21   salary. Both parties rely on Kouba v. Allstate Ins. Co., 691 F.2d 873, 878 (9th Cir. 1982).

22   There, the Ninth Circuit held that the EPA does not impose a per se prohibition against

23   consideration of prior salary in setting a new employee's salary. But there, prior salary

24   was but one of several factors considered by the employer.

25         This case thus obligates this Court to determine if the Ninth Circuit's approval of

26   the use of prior salary as one factor extends to condone its use as the only factor. To

27   address this issue and better understand the parties' arguments as well as this Court's

28                                               12

1    ultimate determination, it is helpful to review the history and context of Kouba as well as

2    subsequent judicial comment on it. In Kouba, Plaintiff represented a class of female

3    insurance agents who accused Allstate of unlawful sex discrimination for using prior

4    salary as one of several factors in determining an employee's starting pay. The district

5    court entered partial summary judgment for Plaintiff. It held in essence that the EPA

6    prohibited consideration of prior salary absent an affirmative showing that the employer

7    had attempted to "ascertain[ ] whether or not the previous salary was itself based upon

8    factors other than sex." Kouba v. Allstate Ins. Co., 523 F. Supp. 148, 163 (E.D. Cal.

9    1981). The district court was concerned that Allstate's policy would perpetuate historic

10   sex discrimination. It therefore sought to provide judicial guidance as to how to limit such

11   an effect: "Although the issue is not without its difficulties, it thus appears to me that as a

12   matter of law an employer may not set a salary schedule which differentiates between its

13   male and female employees doing the exact same job, based upon the immediate past

14   salaries paid to the men and women, unless it can demonstrate that it has assessed the

15   previous salaries and determined that they themselves were set on "other factors other

16   than sex." The district court went on to suggest that a prospective employer could

17   evaluate the previous salaries by contacting the previous employer and inquiring about

18   its hiring practices. Id. at 162-63, 163 n.15.

19          The Ninth Circuit rejected that approach. In reversing and remanding, it held that

20   "the Equal Pay Act does not impose a strict prohibition against the use of prior salary."

21   Kouba, 691 F.2d at 876. While the appellate court "share[d] the district court's fear that

22   an employer might manipulate its use of prior salary to underpay female employees," it

23   observed that a court's ability to protect against such abuse was "somewhat limited"

24   since the Equal Pay Act "entrusts employers, not judges, with making the often uncertain

25   decision of how to accomplish business objectives." Id. A pragmatic standard, "which

26   protects against abuse yet accommodates employer discretion, is that the employer

27   must use the [prior salary] factor reasonably in light of the employer's stated purpose as

28                                            13

1  well as its other practices." Id. at 876-77. The Ninth Circuit recognized the possibility that

2  a business reason could prove to be a pretext for discrimination and that the risk of that

3  is "especially great with a factor like prior salary which can easily be used to capitalize on

4  the unfairly low salaries historically paid to women." Id. at 876. Nonetheless, it held that a

5  violation of the EPA will not be found if the prior salary was "use[d] reasonably in light of

6  the employer's stated purpose as well as its other practices." Id.

7       As noted, Plaintiff seeks to limit Kouba's import to those cases where prior salary

8  is but one of several factors considered by an employer. Defendant, on the other hand,

9  argues that there is no material difference between this case and Kouba.  It urges the

10  Court to find that under Kouba consideration of prior salary, whether alone or in

11  combination with other factors, is permissible so long as its use is reasonably related to

12  an employer's legitimate business reasons.

13      The Ninth Circuit in Kouba was not called upon to, and did not, rule on the

14  question of whether a salary differential based solely on prior earnings would violate the

15  EPA, even if motivated by legitimate, non-discriminatory business reasons. Courts who

16  have considered this issue are split. There are those who have held that an employer's

17  EPA defense may not be based solely on prior salary. See, e.g., Irby v. Bittick, 830 F.

18  Supp. 632, 636 (M.D. GA Sept. 8, 1993) ("If prior salary alone were a justification, the

19  exception would swallow up the rule and inequality in pay among genders would be

20  perpetuated."), aff'd on appeal, 44 F.3d 949, 954 (11th Cir. 1995) ("We have consistently

21  held that 'prior salary alone cannot justify pay disparity' under the EPA.") Angove v

22  Williams-Sonoma, Inc., 70 Fed. Appx. 500, 508 (10th Cir. 2003) (citing Irby in holding

23  that "[t]he EPA only precludes an employer from relying *solely* upon a prior salary to

24  justify pay disparity.") (emphasis in original). See also Price v. Lockheed Space

25  Operations Co., 856 F.2d 1503, 1506 (11th Cir. 1988) ("Kouba does not stand for the

26  proposition that prior salary alone can justify pay disparity. Rather, the Ninth Circuit held

27  that 'the Equal Pay Act does not impose a strict prohibition against the use of prior

28                                    14

1   salary.'"); <u>Lewis v. Smith</u>, 255 F. Supp. 2d 1054, 1063 (D. Ariz. Apr. 4, 2003) (holding

2   that "merely relying on the prior salary of an employee, without analyzing the market

3   value of the employer's [sic] skills, is insufficient to establish an equal pay defense.")

4   (internal citations omitted); <u>Wachter-Young v. Ohio Cas. Group</u>, 236 F. Supp. 2d 1157,

5   1164 (D. Or. May 14, 2002) ("While an employer may not overcome the burden of proof

6   on the affirmative defense of relying on 'any other factor other than sex' by resting on

7   prior pay alone ... there is no prohibition on utilizing prior pay as part of a mixed-motive.")

8   (citing <u>Irby</u>, 44 F.3d at 954);  <u>Wyant v. Burlington Northern Santa Fe R.R.</u>, 210 F. Supp.

9   2d 1263, 1291 (N.D. Ala. Jun. 5, 2002) ("[Defendant]'s reference to [Plaintiff]'s prior

10  salary in setting current salary alone is not a legitimate factor other than sex.").

11       Other courts, however, have expressly held that an employer may rely on prior

12  salary alone. <u>See, e.g.</u>, <u>Wernsing v. Dep't of Human Srvcs, State of Illinois</u>, 427 F.3d 466

13  (7th Cir. 2005) (rejecting the plaintiff's argument that use of prior salary alone violates

14  the EPA); <u>Taylor v. White</u>, 321 F.3d 710, 720 (8th Cir. 2003) ("[W]e believe a case-by

15  case analysis of reliance on prior salary or salary retention policies with careful attention

16  to alleged gender-based practices preserves the business freedoms Congress intended

17  to protect when it adopted the catch-all "factor other than sex" affirmative defense.");

18  <u>Groussman v. Respiratory Home Care</u>, 1985 WL 5621, at *X (C.D. Cal. 1985) (finding

19  that employer satisfied its burden under the EPA by demonstrating that the salary

20  differentials were based on prior salary alone).

21       The Eleventh Circuit's analysis in <u>Glenn v. General Motors Corp.</u>, 841 F.2d 1567

22  (11th Cir. 1988), is helpful. In that case, GM claimed to have "a longstanding, unwritten,

23  corporate-wide policy against requiring an employee to take a cut in pay when

24  transferring to salaried positions" from hourly positions. 841 F.2d at 1570. As a result,

25  the female plaintiffs in that case were paid less than their male comparators who had

26  transferred from higher-paying hourly jobs in the company. The Eleventh Circuit rejected

27  this policy as insufficient to establish a "factor other than sex" for the affirmative defense.

28                                    15

It reviewed the legislative history of the Equal Pay Act, finding that it "indicates that the 'factor other than sex' exception applies when the disparity results from unique characteristics of the same job; from an individual's experience, training, or ability; or from *special exigent circumstances* connected with the business." <u>Id.</u> at 1571 (emphasis added). "[P]rior salary alone cannot justify pay disparity." <u>Id.</u> In a footnote, the <u>Glenn</u> court addressed <u>Kouba</u>:

> Contrary to GM's gloss, <u>Kouba v. Allstate Ins. Co.</u>, 691 F.2d 873 (9th Cir. 1982), does not stand for the proposition that prior salary alone can justify pay disparity. In <u>Kouba</u>, the Ninth Circuit held that "the Equal Pay Act does not impose a strict prohibition against the use of prior salary." <u>Id.</u> at 878. The Ninth Circuit added that "while we share the district court's fear that an employer might manipulate its use of prior salary to underpay female employees, the [district] court must find that the business reasons given by [defendant] Allstate do not reasonably explain its use of the factor before finding a violation of the Act." <u>Id.</u> Allstate had claimed that it used prior salary to predict a new employee's performance as a sales agent. <u>Id.</u> The Ninth Circuit held that strict relevant considerations needed to be evaluated on remand to decide whether Allstate could rely on prior salary. <u>Kouba</u> is consistent with the present case because the Ninth Circuit would permit use of prior salary where the prior job resembled the sales agent position and where Allstate relied on other available predictors. In the present case, GM does not argue that the males' hourly wages serve to predict that males will be better follow-ups than the female appellees. Nor does the evidence in the record as a whole support that GM could resort to any other factor than the prior salary to justify the pay disparity.

841 F.3d at 1571 n.9.

This Court then is faced with the task of passing on the propriety, under the EPA, of Defendant's application of SOP 1440. It must do so within the framework of the foregoing divergent legal authorities and within a factual scenario that leads to the finding — undisputed by Plaintiff — that SOP 1440 was, at least on its face, designed to be objective and gender-neutral. Considering all of the above, the Court concludes that,

16

1  notwithstanding its non-discriminatory purpose, SOP 1440 necessarily and unavoidably
2  conflicts with the EPA.

3      In doing so, this Court will follow the Tenth and Eleventh Circuits and find that a
4  pay structure based exclusively on prior wages is so inherently fraught with the risk –
5  indeed, here, the virtual certainty -- that it will perpetuate a discriminatory wage disparity
6  between men and women that it cannot stand, even if motivated by a legitimate non-
7  discriminatory business purpose. The evidence in this record reflects an across-the-
8  board pay disparity between male and female educators nationwide. Lateral hiring salary
9  plans such as SOP 1440 which do not look beyond prior salary will perpetrate that
10 disparity. Defendant's application of SOP 1440 "contravene[s] Congress' intent and
11 perpetuate[s] the traditionally unequal salaries paid to women for equal work." Price, 856
12 F.2d at 1506; see also Corning Glass Works v. Brennan, 417 U.S. 188, 205 (1974) (A
13 pay differential which "ar[ises] simply because men would not work at the low rates paid
14 women ... [and reflect[s] a job market in which [the employer] could pay women less than
15 men for the same work" is not based on a cognizable factor other than sex under the
16 Equal Pay Act.). To say that an otherwise unjustified pay differential between women
17 and men performing equal work is based on a factor other than sex because it reflects
18 historical market forces which value the equal work of one sex over the other
19 perpetuates the market's sex-based subjective assumptions and stereotyped
20 misconceptions Congress passed the Equal Pay Act to eradicate. Corning Glass, 417
21 U.S. at 210-11.

22     Defendant has not met his burden to assert as an affirmative defense a qualifying
23 justification for the wage differential present here.  Accordingly, summary judgment will
24 be denied.

25     **B.    Title VII**

26     Title VII makes it "an unlawful employment practice for an employer" to
27 "discriminate against any individual with respect to" the "terms, conditions, or privileges

28                                        17

of employment, because of such individual's race, color, religion, sex, or national origin."
42 U.S.C. § 2000e–2(a).

The Court begins its analysis by highlighting the appropriate legal standard applicable to Plaintiff's Title VII claim since the parties' briefs demonstrate confusion. As a starting point, EPA and Title VII claims overlap since both statutes render it unlawful to differentiate "in wages on the basis of a person's sex." Lewis, 255 F. Supp. 2d at 1059 (quoting Maxwell, 803 F.2d at 446). There are, however, important differences between the two statutory schemes. Title VII, for example, places a broader prohibition on discriminatory wages than the EPA and, unlike the EPA, permits a plaintiff to pursue a claim without showing substantial equality of jobs with different pay rates. County of Washington v. Gunther, 452 U.S. 161, 169-71, 179-80 (1981); Lewis, 255 F. Supp. 2d at 1060-61. Also, whereas the EPA "creates a type of strict liability; no intent to discriminate need be shown," Maxwell, 803 F.2d at 446, a claim brought pursuant to Title VII typically involves a showing of discriminatory intent. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253-54 (1981).

The standard applicable to a plaintiff's Title VII claim depends on the theory upon which it is based. When a plaintiff asserts a Title VII claim that is premised on unequal pay for equal work, it is analyzed under EPA standards. Maxwell, 803 F.2d at 446; Gunther v. Washington County, 623 F.2d 1303, 1318 (9th Cir. 1979) ("When a discrimination claim is based on a theory that the plaintiffs are denied equal pay for equal work, Equal Pay Act standards are applicable.") (supplemental opinion denying hearing), aff'd, County of Washington v. Gunther, 452 U.S. 161 (1981). Of course, a Title VII cause of action can also exist outside the scope of the EPA. Gunther, 452 U.S. at 181; Spaulding v. University of Washington, 740 F.2d 686, 699-700 (9th Cir. 1984) overruled on other grounds, Atonio v. Wards Cove Packing Co., Inc., 810 F.2d 1477 (9th Cir. 1987); Lewis, 255 F. Supp. 2d at 1060. Thus, "[w]hen a claim of discrimination is not

18

1    based on an equal work theory, it must be analyzed separately under Title VII." Maxwell,

2    803 F.2d at 446 (emphasis added).

3           Here, Plaintiff's claim is premised on a theory of unequal pay for equal work. See

4    Pl.'s Opp'n at 1 ("[A] discriminatory pay claim under Title VII and FEHA is analyzed the

5    same way as a claim under the Equal Pay Act"); Def.'s Mot. Summ. J. at 11 (Plaintiff's

6    EPA, Title VII and FEHA claims "alleg[e] essentially the same thing: Plaintiff was paid

7    less than male math Consultants for equivalent work"). Accordingly, EPA standards

8    apply to Plaintiff's Title VII claim. Maxwell, 803 F.2d at 446. "[T]he dispositive issue[,

9    therefore,] is whether [Defendant] established a defense to [Plaintiff]'s claims. If

10   [Defendant] can establish a defense, it prevails; if it cannot, [Plaintiff] prevails." Id.

11          As discussed supra, Defendant cannot establish an affirmative defense under the

12   EPA based on its use of prior salary alone. Since Defendant has not asserted any other

13   viable defense, its motion for summary judgment must be denied.

14          **C.      FEHA: Wage Discrimination**

15          Under California's Fair Employment and Housing Act ("FEHA"), it is illegal for an

16   employer to discriminate against an employee "in compensation or in terms, conditions,

17   or privileges of employment" on the basis of sex. Cal. Gov't Code Code § 12940(a).

18   "Because state and federal employment discrimination laws are similar, California courts

19   look to federal precedent when interpreting FEHA. Guz v. Bechtel Nat'l, Inc., 24 Cal. 4th

20   317, 354 (2000); see also Metoyer v. Chassman, 504 F.3d 919, 941 (9th Cir. 2007)

21   ("California courts apply the Title VII framework to claims brought under FEHA.") (citing

22   Guz, 24 Cal. 4th at 354).

23          Under this framework, Defendant's motion for summary judgment on the FEHA

24   claim also will be denied.

25          **D.      FEHA: Failure to Prevent Discrimination**

26          California Government Code § 12940(k) provides that it is unlawful "for an

27   employer ... to fail to take all reasonable steps necessary to prevent discrimination and

28                                              19

harassment from occurring" in the workplace. "When a plaintiff seeks to recover damages based on a claim of failure to prevent discrimination or harassment [ ]he must show three essential elements: 1) plaintiff was subjected to discrimination, harassment or retaliation; 2) defendant failed to take all reasonable steps to prevent discrimination, harassment or retaliation; and 3) this failure caused plaintiff to suffer injury, damage, loss or harm." Lelaind v. City and County of San Francisco, 576 F. Supp. 2d 1079, 1103 (N.D. Cal. 2008). "One such reasonable step, and one that is required in order to ensure a discrimination-free work environment, is a prompt investigation of [a] discrimination claim." California Fair Employment and Housing Commission v. Gemini Aluminum Corporation, 122 Cal. App. 4th 1004, 1024 (2004) (citing Northrop Grumman Corp. v. Workers' Comp. Appeals Bd., 103 Cal. App. 4th 1021, 1035 (2002)).

This claim is premised on Defendant's conclusion that SOP 1440 is not discriminatory following its investigation of Plaintiff's complaint to human resources. Defendant moves for summary judgment on the ground that "[t]he fact that FCOE determined SOP 1440 did not discriminate against women and that Plaintiff was treated entirely consistent with the policy by no means equates to failure to prevent discrimination." Def.'s Mot. Summ. J. at 12. Defendant's argument is conclusory and unsupported by citation to authority. Absent legal authority for doing so, this Court can not absolve an employer of liability for failing to prevent discrimination simply because it investigated a complaint of a discriminatory policy.  Summary judgment will be denied.

**VI.    CERTIFICATION FOR INTERLOCUTORY APPEAL**

  **1.    Legal Standard**

The final judgment rule ordinarily provides that courts of appeal shall have jurisdiction only over "final decisions of the district courts of the United States. 28 U.S.C. § 1291. However, "[w]hen a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of

opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order." 28 U.S.C. § 1292(b). "The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order." Id. "Certification under § 1292(b) requires the district court to expressly find in writing that all three § 1292(b) requirements are met." Couch v. Telescope Inc., 611 F.3d 629, 633 (9th Cir. 2010). "Section 1292(b) is a departure from the normal rule that only final judgments are appealable, and therefore must be construed narrowly." James v. Price Stern Sloan, Inc., 283 F.3d 1064, 1067 n.6 (9th Cir. 2002). To that end, "section 1292(b) is to be applied sparingly and only in exceptional cases." In re Cement Antitrust Litig. (MDL No. 296), 673 F.2d 1020, 1027 (9th Cir. 1981), aff'd sub nom. Arizona v. Ash Grove Cement Co., 459 U.S. 1190 (1983).

### 2.    Discussion

In order to certify an order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b), the court must find that an interlocutory order: (1) involves a controlling question of law; (2) there is substantial ground for difference of opinion on that question; and (3) a resolution of the legal issue will materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b). "A question of law may be deemed 'controlling' if its resolution is quite likely to affect the further course of the litigation, even if not certain to do so." Sokaogon Gaming Enter. v. Tushie-Montgomery Assoc., 86 F.3d 656, 659 (7th Cir. 1996) (citations omitted); Reese v. BP Exploration (Alaska) Inc., 643 F.3d 681, 688 (9th Cir. 2011). An issue of law may also be considered "controlling" if reversal of an order would terminate the action. Genentech, Inc. v. Novo Nordisk A/S, 907 F. Supp. 97, 99 (S.D.N.Y. 1995).

The controlling issue in this case is:  Whether, as a matter of law under the EPA, an employer subject to the EPA may rely on prior salary alone when setting an employee's starting salary? If the answer to this question is "yes", i.e., contrary to this

1  Court's conclusion above, it likely will result in a grant of Defendant's motion for
2  summary judgment and a finding in favor of Defendant on liability on all claims. As such,
3  the first criterion for certification is satisfied.

4  The second factor requires a showing that there is a "substantial ground for
5  difference of opinion." 28 U.S.C. § 1292(b). As noted in <u>Couch v. Telescope, Inc.</u>, 611
6  F.3d 629, 633 (9th Cir. 2010):

> Courts traditionally will find that a substantial ground for
> difference of opinion exists where "the circuits are in dispute
> on the question and the court of appeals of the circuit has not
> spoken on the point, if complicated questions arise under
> foreign law, or if novel and difficult questions of first
> impression are presented." 3 Federal Procedure, Lawyers
> Edition § 3:212 (2010) (footnotes omitted). However, "just
> because a court is the first to rule on a particular question or
> just because counsel contends that one precedent rather
> than another is controlling does not mean there is such a
> substantial difference of opinion as will support an
> interlocutory appeal." <u>Id.</u> (footnotes omitted).

As discussed <u>supra</u>, there is substantial difference of opinion on the question
presented. Specifically, the Tenth and Eleventh Circuits have held that an employer may
not rely solely on prior salary. On the other hand, the Seventh and Eighth Circuits have
held that an employer is not barred from relying on prior salary alone. Put simply, there is
a distinct split in authority on the pure legal question presented by this case and in this
certification request.  The question is one of first impression in the Ninth Circuit. Hence,
the second factor also is satisfied.

The third factor requires that resolution of the legal issue materially advance the
ultimate termination of the litigation. 28 U.S.C. § 1292(b). As the undersigned noted in
the December 7, 2015, Order for additional briefing, it appears that the Court's denial of
Defendant's motion for summary judgment effectively resolves the issue of liability on
Plaintiff's claims in her favor. If, however, the Ninth Circuit determines that Defendant
may rely solely on prior salary in determining an applicant's starting salary, Defendant
may likely avoid liability altogether and see the litigation terminated in its favor.

22

For these reasons, the Court finds it prudent to certify this action for interlocutory appeal.

## VII.    **CONCLUSION**

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Defendant's June 10, 2015, motion for summary judgment (ECF No. 12) is DENIED;

2. The Court CERTIFIES pursuant to 28 U.S.C. § 1292(b) that the legal issue identified in this order – namely, whether, as a matter of law under the EPA, 29 U.S.C. § 206(d), an employer subject to the EPA may rely on prior salary alone when setting an employee's starting salary -- is appropriate for interlocutory appeal.  The issue presented "involves a controlling question of law as to which there is substantial ground for difference of opinion and an immediate appeal from the order may materially advance the ultimate termination of the litigation"; and

3. The January 12, 2016, trial in this matter is hereby VACATED.

IT IS SO ORDERED.

Dated:   __December 17, 2015__        /s/ *Michael J. Seng*
                                     UNITED STATES MAGISTRATE JUDGE

23